## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|                              |     |                            |
|------------------------------|-----|----------------------------|
| **UNITED BANK,**             | *   |                            |
|                              | *   |                            |
| *Plaintiff,*                 | *   |                            |
|                              | *   |                            |
| v.                           | *   | Case No. RWT 13-cv-3227    |
|                              | *   |                            |
| **DAVID BUCKINGHAM,** *et al.*, | * |                            |
|                              | *   |                            |
| *Defendants*.                | *   |                            |
|                              | *   |                            |

## MEMORANDUM OPINION

On September 7, 2017, Plaintiff United Bank ("United Bank") filed an Objection (ECF No. 135) to Magistrate Judge Timothy J. Sullivan's August 25, 2017 Order (ECF No. 129) denying, for reasons stated during the hearing held before him on August 24, 2017, its Motion to Compel Calvin H. Cobb, III to Produce Documents and Testify at Deposition (ECF No. 104). Defendants filed a timely response to the Objection on September 15, 2017 (ECF No. 140). On October 13, 2017, this Court entered an Order (ECF No. 145) overruling United Bank's Objection. This Opinion now explains the basis for the October 13, 2017 Order.

### 1. Background

United Bank is the successor in interest to Virginia Commerce Bank ("VCB"), which began this lawsuit in 2013. VCB, and now United Bank, had been a creditor of the estate of John D. Buckingham ("John") and of John's business, Sun Control Systems, Inc. ("SCS"). ECF No. 16 ¶ 8. United Bank alleges that John's son, Defendant David Buckingham ("David"), in his capacity as guardian of John's property, transferred the ownership and changed the beneficiaries of certain life insurance policies to remove the value of the policies from John's estate, the estate of Elizabeth ("Betty") Buckingham, David's mother, and SCS. *Id.* ¶ 1. These

changes were made, United Bank claims, "for the purposes of hindering, evading and/or defrauding" United Bank. *Id.* ¶ 1. United Bank asserts that the transfer of ownership and change of beneficiaries to David, in his personal capacity and as trustee of the Osprey Trust and the Blue Heron Trust, both of which were created just before the changes of ownership and beneficiaries, were fraudulent conveyances under the Maryland Uniform Fraudulent Conveyance Act ("MUFCA"), Md. Code Ann., Com. Law §§ 15-201, *et seq.*, because they (1) were made without consideration, (2) exceeded David's powers as a guardian, (3) constituted self-dealing, and (4) were done to avoid the reach of VCB as John's and SCS's creditor. *Id.* ¶¶ 1, 42, 47, 54, 59. In addition to David, United Bank joins as Defendants Susan Buckingham ("Susan"), David's sister, in her personal capacity and as co-personal representative of John's estate and trustee of the Cardinal Trust (the third trust created before or around the time the changes in the policies were made), and Richard Buckingham ("Richard"), David's brother, solely in his capacity as co-personal representative of John's estate.

On February 17, 2017, United Bank served a subpoena *duces tecum* on Calvin H. Cobb, III to produce documents and give testimony at a deposition scheduled for March 22, 2017. ECF No. 104-1 at 1. Cobb has served as the Defendants' trusts and estates attorney over a period of years and provided the Defendants with legal advice related to the transactions at issue here. *See id.* at 4. On March 3, 2017, Cobb served objections to the subpoena's document request, asserting, as is relevant here, that the documents were protected from disclosure under the attorney-client privilege. *Id.* at 3–4. Although the parties were able to negotiate a resolution of a number of issues to narrow the scope of the disclosure request, they were unable to resolve all of the issues. *Id.* at 2–3.

United Bank's Motion to Compel was filed as the contemplated next step in the working

agreement among the parties to obtain a ruling by the Court on the issues of:

> (i) whether any or all of the information sought by the Plaintiff from Cobb is protected by the attorney-client privilege or work product privilege; (ii) if any of the information is protected by the attorney-client privilege, whether and to what extent the privilege may have been expressly or impliedly waived or might be subject to the crime-fraud exception to the attorney-client privilege; and (iii) whether and to what extent documents which might be considered confidential documents prohibited from disclosure pursuant to Maryland Rule of Professional Conduct 1.6 should be produced.

*Id.* at 3.

Judge Sullivan held a hearing on the Motion to Compel on August 24, 2017. He ruled

from the bench, denying the Motion. ECF No. 129. As stated at the hearing, Judge Sullivan

concluded that the Motion to Compel should be denied because United Bank had not "made out

a prima facie case of fraud such that the crime fraud exception could apply." ECF No. 130 at 53.

He held that, even assuming that a conveyance deemed fraudulent under the MUFCA can trigger

the crime-fraud exception to the attorney-client privilege (which this Court has not yet

determined), United Bank had failed to make the requisite prima facie showing of fraud to pierce

the privilege. *Id.* at 53–54. Specifically, Judge Sullivan held that "[United] Bank has not

presented sufficient evidence for me to find that the Buckingham's [sic] engaged in deception,

dishonesty, misrepresentation, falsification, or forgery." *Id.* at 54. He distinguished between

transactions that might be invalid under state law and transactions that include conduct of lying

or misleading such that they are rendered sufficiently fraudulent to trigger the crime-fraud

exception. *See id.* at 54–55. Because the crime-fraud exception is to be viewed narrowly

according to Maryland precedent, he held that it is only transactions that meet the higher level of

fraud that warrant application of the crime-fraud exception to the attorney-client privilege. *See*

*id.* at 55. Judge Sullivan also found that the Defendants did not waive the attorney-client

privilege by invoking it in response to questions because they did not rely on advice of counsel to negate the alleged wrongdoing. *Id.*

United Bank filed its Objection to the denial of its Motion on September 7, 2017. It bases its Objection on three grounds, arguing that Judge Sullivan erred in holding that: (1) a fraudulent conveyance does not warrant application of the crime-fraud exception to the attorney-client privilege under Maryland law; (2) United Bank did not establish a prima facie case of "fraud" because it failed to produce evidence of "deception, dishonesty, misrepresentation, falsification, or forgery" and thus the crime-fraud exception does not apply; and (3) the Defendants did not impliedly waive the attorney-client privilege. ECF No. 135 at 1– 2. The Defendants filed their Opposition to United Bank's Objection on September 15, 2017. ECF No. 140. The issue being fully briefed and a hearing on all dispositive motions then scheduled for November 27, 2017, the Court disposed of the matter promptly by Order entered on October 13, 2017 to allow the parties to prepare for the November hearing.

## 2. **Standard of Review**

Federal Rule of Civil Procedure 72 provides for the district court's review of a magistrate judge's order. Rule 72(a) provides that, for nondispositive matters, "[t]he district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."); D. Md. L.R. 301.5.a. "Under the clearly erroneous standard, the reviewing court is not to ask whether the finding is the best or only conclusion permissible based on the evidence. Nor is it to substitute its own conclusions for that of the

magistrate judge." *Huggins v. Prince George's Cty.*, 750 F. Supp. 2d 549, 559 (D. Md. 2010).

Rather the court is "only required to determine whether the magistrate judge's findings are

reasonable and supported by the evidence." *Id.* Indeed, "[i]t is not the function of objections to

discovery rulings to allow wholesale relitigation of issues resolved by the magistrate judge."

*Buchanan v. Consol. Stores Corp.*, 206 F.R.D. 123, 124 (D. Md. 2002).

### 3. Discussion

### A. The Attorney-Client Privilege and Crime-Fraud Exception

"The attorney-client privilege is the oldest of the privileges for confidential

communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389

(1981) (citing 8 J. Wigmore, *Evidence* § 2290 (McNaughton rev. 1961)). As a rule of evidence,

"the privilege prevents the disclosure of a confidential communication made by a client to his

attorney for the purpose of obtaining legal advice." *Newman v. State*, 384 Md. 285, 302, 863

A.2d 321, 335 (2004). The common law privilege has been codified under Maryland law.[1] Md.

Code Ann., Cts. & Jud. Proc. § 9-108 (2017). The privilege's purpose

> is to encourage full and frank communication between attorneys and their clients
> and thereby promote broader public interests in the observance of law and
> administration of justice. The privilege recognizes that sound legal advice or
> advocacy serves public ends and that such advice or advocacy depends upon the
> lawyer's being fully informed by the client.

*Upjohn Co.*, 449 U.S. at 389.

Although an important protection to promote effective attorney-client relationships, the

privilege is not absolute. *Newman*, 384 Md. at 302, 863 A.2d at 331. To enjoy the protection,

the communication must be (1) for the purpose of seeking legal advice, (2) from a professional

legal adviser in such capacity, (3) by the client asserting the privilege, and (4) made in

---

[1] Because this is a diversity action involving only state law claims, Maryland privilege law applies. Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.").

confidence.  *See id.* at 302, 863 A.2d at 331.  A communication is not privileged if it was made

for the purpose of seeking advice or aid in furtherance of a crime or fraud.  *Id.* at 309, 863 A.2d

at 335.  This carve-out of the privilege is known as the crime-fraud exception and was

recognized under Maryland law in 2004.  In *Newman v. State*, the case in which the Court of

Appeals of Maryland recognized the exception, the court used the Restatement (Third) of the

Law Governing Lawyers to define the exception:

> The attorney-client privilege does not apply to a communication occurring when a client:
>> (a) Consults a lawyer for the purpose, later accomplished, of obtaining assistance to engage in a crime or fraud or aiding a third person to do so, or
>> (b) Regardless of a client's purpose at the time of consultation, uses the lawyer's advice or other services to engage in or assist a crime or fraud.

*Id.* at 309, 863 A.2d at 335 (quoting Restatement (Third) of the Law Governing Lawyers § 82

(Am. Law Inst. 2000, 2004 cum. supp.)).

In *Newman*, the Court of Appeals stated clearly that "more than a mere statement of the

intent to commit a crime or fraud" is required "to trigger the crime-fraud exception to the

attorney-client privilege."  *Id.* at 310, 863 A.2d at 335.  To hold otherwise would permit the

exception to destroy the privilege.  *Id.* at 311, 863 A.2d at 336.  In that case, the court found that

the communication at issue evidenced only an intent to commit a crime—there the intent of the

defendant to kill her husband and children—but it was not enough to show that the client sought

advice or assistance from the attorney *in furtherance of* that crime.  *Id.* at 311, 863 A.2d at 336.

Although the fact that the attorney disclosed the client's statement may have shown that the

attorney viewed the client's intent as serious, it was not enough to show that the attorney was

consulted "for the purpose of obtaining assistance in furtherance of a future crime or fraud."

*Id.* at 312, 863 A.2d at 336.  In order to pierce the privilege, there must be a greater showing of

"in furtherance of" than a mere statement of intent made to the attorney.  *See id.* at 310–12, 863 A.2d at 335–37.

The Court of Appeals of Maryland has not yet decided whether conveyances deemed to be fraudulent under the MUFCA constitute "fraud" sufficient to trigger the crime-fraud exception.  In *BAA, PLC v. Acacia Mutual Life Insurance Co.*, 400 Md. 136, 159, 929 A.2d 1, 15 (2007), the Court of Appeals held that there was no fraud exception to the accountant-client privilege because, unlike the attorney-client privilege, the accountant-client privilege is a statutory creation in which the exceptions to that privilege are explicitly enumerated.  Furthermore, in a footnote, the court in *BAA* stated that in choosing to require more than a mere showing of a statement of intent to commit a crime or fraud to trigger the exception, the *Newman* court had rejected the notion "that the crime-fraud exception to the attorney-client privilege should be viewed expansively."  *Id.* at 156 n.18, 929 A.2d at 13 n.18.  This Court agrees.

In *Koch v. Specialized Care Services, Inc.*, 437 F. Supp. 362, 376–77 (D. Md. 2005), Magistrate Judge Susan Gauvey of this Court took a broad approach in defining "fraud" for purposes of the exception under Maryland law.  She concluded that the exception could apply in cases of tortious interference when the nature of the conduct is in furtherance of "injurious falsehood or fraud."  For Judge Gauvey, the analysis turned on the nature of the wrongful conduct, not the form in which the conduct was pleaded:  if the alleged wrongful conduct could constitute "fraud," then the exception could apply.  *See Koch*, 437 F. Supp. at 373.  This Court is extremely reluctant to adopt such an expansive view of the exception.

Although the Maryland courts have not adopted Judge Gauvey's approach or defined more generally what type of fraud qualifies for the exception, the Supreme Court has weighed in on the issue of what constitutes "fraud," at least in the context of § 523(a) of the Bankruptcy

Code. In *Husky International Electronics, Inc. v. Ritz,* 136 S. Ct. 1581, 1586 (2016), it held that "actual fraud" "encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Id.* The "actual" component, however, means that the fraud committed must be done with "wrongful intent," as opposed to "implied" fraud or fraud "in law," "which describe acts of deception that 'may exist without the imputation of bad faith or immorality.'" *Id.* (quoting *Neal v. Clark*, 95 U.S. 704, 709 (1878)).

### B. Application of the Crime-Fraud Exception to Fraudulent Conveyances

Regarding its first challenge, United Bank argues that Judge Sullivan incorrectly concluded that the crime-fraud exception cannot be triggered by a conveyance deemed fraudulent by statute. *See* ECF No. 135-1 at 5. It asserts that Judge Sullivan misconstrued Maryland legal precedent on the issue to conclude erroneously that the exception is to be construed narrowly and disregarded the Supreme Court's decision in *Husky. See id.*

It is United Bank, however, that has misconstrued the applicable law. As the Defendants point out in their Opposition, ECF No. 140 at 3, Judge Sullivan did not rule categorically that statutory fraudulent conveyances are insufficient to warrant application of the exception. Judge Sullivan stated that "to the extent that the transactions might constitute fraudulent conveyances under the Maryland Uniform Fraudulent Conveyances Act, I do not find that this type of fraud is sufficient for the application of the crime fraud exception." He did not reach a categorical conclusion that fraudulent conveyances can *never* trigger the exception, but rather that a conveyance deemed fraudulent by statute does not *necessarily* trigger the exception. ECF No. 130 at 54. For an alleged conveyance deemed fraudulent under the statute to trigger application of the exception, the allegations must present sufficient evidence of "deception, dishonesty, misrepresentation, falsification, or forgery." *Id.* As it is true that not all fruits are

apples, so also it is true that not all conveyances deemed fraudulent by statute trigger the exception, even if some might.

This conclusion is in line with both Supreme Court and Maryland precedent. Although United Bank argues that Judge Sullivan gave no weight to *Husky*, it advocates for too much weight. United Bank is correct that the Supreme Court in *Husky* held that "actual fraud" can include fraudulent conveyance schemes, even those that do not involve a false representation. 136 S. Ct. at 1590. But, nowhere did the Court say that *all* fraudulent conveyances constitute actual fraud. The Court explained that "actual fraud" by definition requires "wrongful intent," and therefore by logic can only encompass conveyances deemed fraudulent by statute that are done with wrongful intent. *See id.* at 1586. By the Court's own distinction, "implied" fraud or fraud "in law" are insufficient to trigger an exception without a showing of actual fraud. *See id.* at 1586.

United Bank argues that because it is alleging that the fraudulent conveyances at issue in this case were done *intentionally*, that should be enough to pierce the attorney-client privilege. ECF No. 135-1 at 12. United Bank argues that by requiring a showing of "deception, dishonesty, misrepresentation, falsification, or forgery," Judge Sullivan inappropriately imposed an additional burden. *Id.* It points to the holding by the Supreme Court in *Husky* "that the term 'actual fraud' as used in Section 523(a)(2)(A) of the Bankruptcy Code included transfers done to 'hinder, delay or defraud' creditors," the same language employed by the MUFCA, Md. Code Ann., Com. Law § 15-207. Therefore, United Bank argues, if "[p]laintiffs have demonstrated to the Court's satisfaction that the challenged transfers were done with wrongful intent, then, under *Husky*, the Court would be effectively ruling that Plaintiff must make out a prima facie case of

something more than 'actual fraud'" if it must also show "deception, dishonesty, misrepresentation, falsification, or forgery" to trigger the exception. ECF No. 142 at 3.

What United Bank fails to understand is that Judge Sullivan only concluded that it had failed to demonstrate that the challenged transfers were done with *wrongful intent*, despite its blanket assertions that they were "intentional." *See* ECF No. 142. Judge Sullivan merely assumed for the sake of argument "that the transactions at issue were invalid under Maryland law," ECF No. 130 at 53–54, not that they had been done with the requisite intent to constitute *actual* fraud. Judge Sullivan's finding that United Bank failed to make a showing of "deception, dishonesty, misrepresentation, falsification, or forgery" to bring the transactions into the actual fraud category, therefore, is entirely consistent with *Husky*. He merely recognized the fundamental difference between a transaction done with wrongful intent, and thus actual fraud, and a transaction done without wrongful intent, and thus only implied fraud, despite both transactions constituting "fraudulent conveyances" under the MUFCA.

This conclusion is fully supported by Maryland case law. United Bank correctly summarizes the precedent regarding application of the exception, but misconstrues it. Although the Court of Appeals of Maryland has never ruled that conveyances deemed fraudulent under the MUFCA warrant application of the crime-fraud exception, there is nothing in the case law to suggest that it would "decline to apply the crime-fraud exception to communications relating to an *intentional* fraudulent conveyance under Com. Law. Art., §15-207." ECF No. 135-1 at 6 (emphasis in original). Again, however, United Bank misrepresents Judge Sullivan's reliance on Maryland case law. In finding that the Court of Appeals, first in *Newman* and then in *BAA*, had held that the crime-fraud exception should be viewed narrowly, *see* ECF No. 130 at 54–55, Judge Sullivan also was not saying that all statutory fraudulent conveyances can never trigger the

exception. Furthermore, Judge Sullivan's rejection of *Koch* as a helpful analogue for this case, *see* ECF No. 130 at 55, was not a rejection of the exception's application in fraudulent conveyance cases generally. Instead, because *Koch* involved assistance by the defendant's in-house counsel in the alleged false representations themselves, *see* 427 F. Supp. 2d at 371, *Koch* was a clear case of actual fraud that warranted application of the exception, unlike in this case where there has been no showing of assistance in "the perpetration of falsehood" on the part of Mr. Cobb. *See* ECF No. 130 at 55.

### C. Prima Facie Case of Actual Fraud

This brings us to United Bank's second challenge to Judge Sullivan's ruling, i.e., that "[United Bank] did not establish a prima facie case of 'fraud' to warrant application of the crime fraud exception, and specifically, [United Bank] was required to produce evidence of 'deception, dishonesty, misrepresentation, falsification, or forgery.'" ECF No. 135-1 at 5. Although, as discussed above, the Supreme Court held in *Husky* that a qualifying fraudulent conveyance to constitute actual fraud need not include a false representation, there still needs to be a showing that the alleged fraud was more than implied fraud, i.e., that it included *wrongful intent*.

> In order to invoke the crime/fraud exception, the movant must make a prima facie showing that the communications were either made for an unlawful purpose or that the communications reflect ongoing or future unlawful activity. The movant does not have to conclusively prove the elements of the purported crime or fraud . . . but the movant must show that the client possessed the requisite intent.

*In re Andrews*, 186 B.R. 219, 222 (E.D. Va. Bankr. 1995) (citing *Indus. Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.*, 953 F.2d 1004, 1008 (5th Cir. 1992)) (other internal citations omitted).

United Bank argues that it has established a prima facie case of actual fraud because it made a prima facie showing of a fraudulent conveyance made with the actual intent to hinder,

delay, and defraud a creditor, under § 15-207 of the MUFCA. ECF No. 135-1 at 12. It relied

upon the "badges of fraud" approach articulated by the Court of Appeals of Maryland in

*Berger v. Hi-Gear Tire & Auto Supply, Inc.*, 257 Md. 470, 263 A.2d 507 (1970), to argue that the

facts alleged in this case are enough for the court to infer wrongful intent despite the absence of

direct evidence. In *Berger*, the court stated that because a creditor "can seldom prove as an

independent fact the knowledge of or participation in the fraud of the grantor by the grantee[,]

[t]hat knowledge or participation must be gathered from the various facts and incidents

composing the transactions and its environment." 257 Md. at 475–76, 263 A.2d at 510. These

"indicia or badges" of fraud include:

> [1.] the insolvency or indebtedness of the transferor, [2.] lack of consideration for
> the conveyance, [3.] relationship between the transferor and the transferee, [4.]
> the pendency or threat of litigation, [5.] secrecy or concealment, [6.] departure
> from the usual method of business, [7.] the transfer of the debtor's entire estate,
> [8.] the reservation of benefit to the transferor, and [9.] the retention by the debtor
> of possession of the property.

*Id.* at 476, 263 A.2d at 510 (quoting 37 Am. Jur. 2d *Fraudulent Conveyances* § 10 (1968)). The

*Berger* court further explained that although "one circumstance recognized as a badge of fraud

may not alone prove fraud, where there is a concurrence of several such badges of fraud an

inference of fraud *may* be warranted." *Id.* at 476–77, 263 A.2d at 510 (emphasis added) (quoting

37 Am. Jur. 2d § 10). In *Berger*, the court found that the presence of some of the nine badges of

fraud supported a finding of a fraudulent conveyance. *See id.* at 477, 263 A.2d at 510.

In this case, United Bank claims that an email between David and Thomas Buckingham

(ECF No.139-1) produced by the Defendants during discovery shows that "David understood

that if SCS drew down accelerated death benefits on some of the insurance policies, such

proceeds would be available to and collected by SCS's creditors." ECF No. 135-1 at 13. It also

claims that it presented sufficient facts as badges of fraud to support a finding of an intentional

fraudulent conveyance under § 15-207. *Id.* at 14. These facts include: (1) "the transfers of the interests in the policies"; (2) "the insolvency and enormous debt of SCS"; (3) "the relationship between the transferor and transferee in the transactions that conveyed the interests in the policies at issue (David was both the transferor and transferee)"; (4) "the pendency or threat of litigation, (i.e. creditor collection actions by Plaintiff)"; and (5) "the transfer of the debtor's entire estate." *Id.* As sufficient indicia of fraud, United Bank asserts that it has shown that "(i) Defendants implemented an intentional plan to preserve the value in the insurance policies for family members rather than expose the assets to creditors and (ii) Calvin Cobb's services were used *in furtherance* of that plan." ECF No. 142 at 6 (emphasis in original). Because of this, United Bank argues that Judge Sullivan's insistence that there be a showing of "deception, dishonesty, misrepresentation, falsification or forgery" is an unnecessary additional element to trigger the crime-fraud exception. *Id.*

The cases cited by United Bank where courts have applied the exception to fraudulent conveyances, however, do not bear out this argument. First, the federal cases cited all include a showing of deceit as part of the wrongful conduct. In *United States v. Ballard*, 779 F.2d 287, 293 (5th Cir. 1986), the Fifth Circuit held that the attorney-client privilege did not protect the defendant because it was clear from the record that the defendant used the advice of his former attorney in furtherance of concealing property from his creditors. The fact that the defendant used his attorney's counsel in furtherance of the crime of concealing from a creditor a property transfer made within one year of filing for bankruptcy, under 18 U.S.C. § 152, was enough in that case for the privilege to be pierced. *Id.* The defendant's actions in *Ballard* included conduct of "deception, dishonesty, misrepresentation, falsification, or forgery" because he sold property one month prior to filing for bankruptcy, hid the proceeds from the sale in his wife's safe deposit

13

box, and did not disclose the sale or the proceeds in his bankruptcy filing. *See id.* at 290–91, 293.

Similarly in *In re Andrews*, 186 B.R. 219, 221–22 (E.D. Va. Bankr. 1995), the bankruptcy court found the circumstances sufficient to warrant application of the crime-fraud exception where the defendant made a number of transfers within the year before filing for bankruptcy but failed to disclose those transfers in his bankruptcy filings. The court used "badges of fraud" to find that the moving party made a sufficient prima facie showing of fraudulent intent such that the crime-fraud exception was triggered. *Id.* at 222–24. Each of the three transfers at issue in that case was under scrutiny because defendant failed to disclose them in his bankruptcy filings. *See id.* at 221. A failure to disclose, as in *Ballard*, comfortably fits within the definition of "misrepresentation, dishonesty, and deception."

In *Rambus, Inc. v. Infineon Technologies AG*, 222 F.R.D. 280, 290 (E.D. Va. 2004), the district court applied the crime-fraud exception to communications created in the "planning, or in furtherance of, spoliation of evidence." The court reasoned that the Fourth Circuit would find it inconceivable that a "client's interest in confidential communications . . . would outweigh the societal need to assure the integrity of the process by which litigation is conducted which, of course, is the purpose of prohibiting spoliation of evidence." *Id.* at 288. It found that expanding the exception's scope to include spoliation was consistent with the Fourth Circuit's application of the attorney-client privilege and thus was a natural and proper extension of the exception. *See id.* at 289. By definition, spoliation of evidence is "the willful destruction of evidence or the failure to preserve potential evidence for another's use in pending or future litigation." *Id.* at 287 (citations omitted). Therefore the very act of spoliation includes intentional acts of "dishonesty and deception." In *Rambus*, the court found that the defendant had intentionally destroyed

documents for the purpose of evading disclosure, and so application of the crime-fraud exception was warranted. *See id.* at 290–93.

Although the transfers at issue here may include badges of fraud other than "deception, dishonesty, misrepresentation, falsification, or forgery," as United Bank claims, the presence of any particular indicia of fraud, or any particular combination of such, is not dispositive. *See Berger*, 257 Md. at 476–77, 263 A.2d at 510. It is the court's duty to consider all of the circumstances in determining whether a sufficient showing of intent has been made. *See In re Andrews*, 186 B.R. at 222–23. Under the circumstances presented here, Judge Sullivan was well within reason to find that United Bank failed to make out a prima facie showing of wrongful intent in relation to the conveyances at issue in this case.

### D. Waiver of the Privilege

Finally, United Bank challenges Judge Sullivan's conclusion that the Defendants did not impliedly waive the attorney-client privilege. Judge Sullivan concluded that, based on the evidence presented, the Defendants did not impliedly waive the privilege because they "state that they do not rely on the advice of counsel and [sic] negate the [wrongdoing] alleged in the Bank's complaint." ECF No. 130 at 55. United Bank points to instances in the depositions of Susan and David that, it argues, show that the Defendants referenced Mr. Cobb and communications with him in their answers explaining why they took the actions that they did. ECF No. 135-1 at 17–18. Specifically, it claims that because the Defendants have asserted "an ostensible legitimate purpose for the transactions in which Mr. Cobb participated, namely routine planning," the "Defendants are using Mr. Cobb's involvement as a defense while at the same time invoking the attorney-client privilege to prevent Plaintiff's inquiry regarding the actual purpose and intent of the Defendants." *Id.* at 17.

As explained in *BAA*, a client can waive a privilege (in that case the accountant-client privilege) through her explicit permission, her conduct, or her disclosure to a third party. 400 Md. at 160, 929 A.2d at 15. The client can also waive the privilege by "issue injection," that is "when the client injects the professional activity or the advice of an accountant as an issue in a particular case." *Id.* at 160, 929 A.2d at 15 (citing *Sears, Roebuck & Co. v. Gassin*, 350 Md. 552, 565, 714 A.2d 188, 194 (1997)). Applying that standard, the Court of Appeals of Maryland rejected the defendants' contention that BAA waived the privilege through issue injection. *Id.* at 161, 929 A.2d at 16. The court found that BAA did not inject the professional activity or advice of their accountants because its reference to the interactions with the audits was done only "as part of its defense" to the Noteholders' claims. *Id.* at 161, 929 A.2d at 16. The client "does not waive the [accountant-client] privilege by merely denying the opposing accusations." *Id.* at 162, 929 A.2d at 16 (quoting *Sears*, 350 Md. at 567).

The Court of Appeals further expounded on the issue in *CRS-RSC Tower I, LLC v. RSC Tower I, LLC*, stating that

> [a] party waives his attorney-client privilege when the party relies on the advice of counsel as an element of his defense. In other words, the client cannot use the advice of counsel as a sword to prove his case but then assert the privilege as a shield to prevent disclosing harmful information.

429 Md. 387, 435, 56 A.3d 170, 199 (2012) (quoting *ST Sys. Corp. v. Md. Nat'l Bank*, 112 Md. App. 20, 35, 684 A.2d 32, 39–40 (Md. Ct. Spec. App. 1996)). In that case, the court found that the defendants had attempted to use the privilege as a sword and shield, and thus had waived it by issue injection, when the defendants "brought up conversations with their attorneys to answer questions about their reasons and motivations for certain actions." *Id.* at 440, 56 A.3d at 202. The court found that the "[defendants] employed this strategy in an effort to prove that they acted in good faith in refusing to sign the estoppel certificates." *Id.* at 440, 56 A.3d at 202. In making

this finding, the court explained that a "client's simple denial of an allegation by the opposing side that an act was committed with a particular intent does not inject advice of counsel into the case, even though that advice may have been the reason why the intent was not present." *Id.* at 449, 56 A.3d at 207. However, a client does inject advice of counsel into the case when she attempts to "defend a charge of bad faith by referencing specific communications with attorneys that purportedly provided a good-faith basis for certain actions, and then refuse to allow any further investigation into those communications." *Id.* at 449, 56 A.3d at 207.

In its Objection, United Bank relies on *CR-RSC Towers I*, arguing that it is analogous to this case. ECF No. 135-1 at 18. It is not clear, however, from the deposition excerpts United Bank provided to the Court that the Defendants attempted to use the privilege as both a sword and shield such that waiver would follow. It starts off by asserting that similar to the plaintiff in *CR-RSC Tower I*, its "chief goal in obtaining discovery of communications and information concerning Mr. Cobb's representation of the Defendants is the Defendants' intent in carrying out the acts in dispute." ECF No. 135-1 at 18.

Next it cites to statements by Susan in her deposition where she references "communication and consultation with Mr. Cobb when asked about the reason why she and David carried out certain actions," allegedly similar to the statements by the defendants in *CR-RSC Towers I. Id.* The first statement to which United Bank points, that "Susan stated that she 'supported Calvin Cobb's opinion' with respect to certain provisions naming beneficiaries of the Osprey Trust," was not provided by United Bank in its supporting exhibits, and this Court cannot fully understand the statement in context. *See* ECF Nos. 135-1 at 18; 135-2. The other statements referenced, which were attached to its Objection, include: (1) Susan's response that "[t]here was a great deal of research provided by Calvin Cobb" (ECF No. 135-2 at 2) to the

17

question of how the $110,000 price paid by Osprey Trust to SCS for one of the insurance policies was determined; (2) Susan's response that "I think this is where I say Calvin Cobb" to the question of whether David had explained to her "why the [O]sprey [T]rust had to buy those policies from Sun Control" (ECF No. 135-2 at 3); and (3) Susan's response to a question that "[t]his issue was thoroughly vetted, thoroughly vetted by a variety of lawyers that they—they weren't the—they weren't the assets of any creditors" (ECF No 135-2 at 4).[2] ECF No. 135-1 at 18–19.

United Bank further points to references to Mr. Cobb and to "specific communications" made by David during his deposition. Those specific communications, according to United Bank, include that David stated that "he consulted with [Mr. Cobb] regarding the formation of the Osprey Trust" (ECF No. 135-3 at 1), and that he consulted with Mr. Cobb regarding the decision of how to pay legal fees out of the Osprey Trust (ECF No. 135-2 at 2–5). ECF No. 135-1 at 19. The legal fees referenced in the latter statement are the payments that United Bank asserts "constitute fraudulent conveyances made to hinder, delay, and defraud it as a creditor." *Id.* According to United Bank, because these references to specific communications with Mr. Cobb were made in response to questions about intent, "they serve as implied waivers of the attorney-client privilege under Maryland law." *Id.*

Although these statements by David do refer to specific communications with Mr. Cobb, that alone is not enough to constitute a waiver. *See CR-RSC Tower I, LLC*, 429 Md. at 435, 56 A.3d at 199. It matters how the specific communications are being used by the party claiming the privilege: specifically, whether the party is attempting to use the privilege as both a sword

---

[2] United Bank asserts in its Objection that the question asked was "whether [Susan] ever considered whether the insurance policy proceeds that ultimately were paid to the Blue Heron Trust could have been assets that the estate [of John] could have used to pay off its debts," but it did not attach that page of the deposition transcript in its filing. *See* ECF No. 135-1 at 19.

and a shield. *See id.* at 435, 56 A.3d at 199. In this case, unlike in *CR-RSC Tower I, LLC*, both Susan's and David's references to Mr. Cobb were done so only as shields, as protection against disclosing privileged material. Nowhere in the cited statements do the Defendants attempt to use those communications with Mr. Cobb as a defense of wrongful conduct taken. In response to the question posed to David about the legal fees, David does not assert that he made his decision based on communications with Mr. Cobb or that the decision was done in good faith as justified by his consultation with Mr. Cobb, unlike the defendants in *CR-RSC Tower I, LLC* who attempted to use their communications with their attorneys to prove they acted in good faith. *See id.* at 440, 56 A.3d at 202. In this crucial way, the Defendants' invocation of the attorney-client privilege was done only as a shield, the traditional and protected use of the privilege, and not as a sword to deny wrongdoing or as affirmative justification for their allegedly wrongful conduct.

This case, then, fits under the distinction articulated in *Fraidin v. Weitzman*. In that case, the Maryland Court of Special Appeals held that when a client uses a *defense* of advice of counsel, then the client waives her attorney-client privilege. *See* 93 Md. App. 168, 228, 611 A.2d 1046, 1076 (Md. Ct. Spec. App. 1992). The court defined the advice of counsel defense as "whereby a party 'attempt[s] to establish his own blamelessness by casting the blame for his conduct on his . . . attorney." It does not involve the denial of wrongdoing, but rather, attempts to 'negate wrongdoing' where it was based on the advice of counsel." *Id.* at 227, 611 A.2d at 1075 (quoting *Manown v. Adams*, 89 Md. App. 503, 514, 598 A.2d 821 (Md. Ct. Spec. App. 1991)). The court there found that although the defendant did in fact state that he relied on the advice of counsel with respect to his entering into a settlement with the defendants, it was not enough to constitute a waiver because the defendant's liability was not premised on the settlement. *Id.* at 228, 611 A.2d at 1075–76. Rather, because his liability was premised on

"his alleged conduct in inducing the [plaintiffs] to discharge their counsel by making counsel's discharge a condition of the settlement," an action the defendant denied he took, his reference to the advice of his counsel could not constitute a waiver. *Id.* at 228, 611 A.2d at 1076. As the court explained, "[a]t no point did [the defendant] defend himself by claiming his counsel advised him that he could do this." *Id.* at 228, 611 A.2d at 1076. A denial of wrongdoing, therefore, is distinct from a defense or a negation of wrongdoing.

This Court agrees with Judge Sullivan's conclusion that mere references to communications or advice of counsel, even reliance on the advice of counsel, on its own is not enough to constitute an implied waiver of the privilege. *See* ECF No. 130 at 55. There must be reliance on those communications in order to "negate the wrongdoing." Because United Bank has failed to show that Defendants' references to communications with Mr. Cobb were anything more than mere invocation of the privilege for the purpose of protection against disclosure of confidential communications, its Objection is not well-founded.

### 4. Conclusion

For the foregoing reasons, the Court concludes that the Order of Judge Sullivan was neither clearly erroneous nor contrary to law, and it is for these reasons that United Bank's Objections to Magistrate's Denial of Its Motion to Compel (ECF No. 135) were overruled by this Court's Order of October 13, 2017.

Date: March 13, 2018                                   _____/s/_____

ROGER W. TITUS
UNITED STATES DISTRICT JUDGE